COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges O'Brien and Lorish
Argued at Lexington, Virginia


QUINTIAL LOUWELL SPINNER

v.      Record No. 0725-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE MARLA GRAFF DECKER
AUGUST 15, 2023

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Ronnie H. West (West Law Firm, PLC, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Matthew P. Dullaghan, Senior Assistant
Attorney General, on brief), for appellee.


Quintial Louwell Spinner appeals his convictions, following a jury trial, for involuntary

vehicular manslaughter, misdemeanor driving while intoxicated, and felony hit-and-run, in violation

of Code §§ 18.2-36.1, 18.2-266, and 46.2-894.[1]  For the following reasons, we affirm the judgment

of the trial court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The appellant was also convicted of driving with a suspended or revoked license, but he
does not challenge this conviction on appeal.

BACKGROUND[2]

Around 8:00 p.m. on November 14, 2020, the appellant struck a young woman with a car. She was initially treated at the scene of the accident and then transported to a hospital. Despite treatment, she died of her injuries two days later.

Several officers from the Lynchburg Police Department investigated the accident. Around 8:10 p.m., the appellant approached officers at the scene. He identified himself and said he witnessed the accident. He told Officer Josiah Babbitt that the "[g]irl came across the street. The car hit her. The car wasn't speeding or nothing. The car just hit her."[3] After further questioning, the appellant told the officer that he was the driver of the car that struck the pedestrian and said that the car was parked one block away. At that time, the appellant reported that he had not stopped the vehicle sooner because he did not know what he had struck.

Officer Nathaniel Hertzog also questioned the appellant. The appellant told him that he left his cousin's house, drove to a market, and bought sodas. He said that he was driving on Twelfth Street, near the intersection at Taylor Street, when he hit something that damaged the front windshield of the car and tore off the driver's side mirror. According to the appellant, the collision caused him to miss his turn, so he made several turns and arrived back on Taylor Street. He parked, got out of the car, and smoked a cigarette before returning to the scene of the collision on foot.

In response to additional questioning, the appellant said that he had consumed alcohol in the early morning hours but none since he fell asleep at 5:00 a.m. that morning. Officer Hertzog asked

---

[2] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth," as the prevailing party below. *Flanders v. Commonwealth*, 298 Va. 345, 350 (2020) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).

[3] Footage from Babbitt's body-worn camera of his discussion with the appellant was played for the jury and admitted into evidence.

the appellant to perform field sobriety tests. At the conclusion of the tests, Hertzog arrested him for driving under the influence of alcohol.

It was cold that evening, and the appellant wore a face mask. Once the appellant was handcuffed, however, his mask slipped, and Officer Hertzog smelled alcohol coming from his person.

Officer Hertzog took the appellant to the magistrate's office, where Officer Sherman Ferguson, also of the Lynchburg Police Department, administered a breath test to analyze the appellant's blood alcohol content. The test revealed that the appellant had a breath alcohol content of 0.05 grams per 210 liters of breath at 11:50 p.m. The certificate reflecting that result was admitted into evidence over the appellant's objection.

After the breath test, Hertzog obtained a search warrant for the appellant's blood. Later, the appellant's blood was withdrawn at 12:39 a.m. on November 15. This test revealed that the appellant had a blood alcohol concentration (BAC) of .038% by weight by volume.

At trial, over the appellant's objection, Antonio Woody, the appellant's cousin, testified as a witness for the Commonwealth. At the time of the accident, he lived less than two blocks away from where it occurred. Woody stated that, on November 14, he had people over to his home. The appellant arrived at the gathering around midday. Woody knew many people consumed alcohol but was uncertain if the appellant had done so. The appellant left around sunset. Later that evening, the appellant texted Woody, notifying him that he had been in an accident. As Woody walked down the street toward the accident, he saw the car where the appellant had parked it and noticed the cracked windshield. He then found the appellant at the intersection where the accident had occurred.

Catherine Justis testified that she owned Justis Market, located at the corner where the accident took place. In response to a police request, Justis downloaded the parking lot video footage

from the store surveillance system for the time of the accident. The recording shows that as the victim attempted to cross the street, a car struck her, and then continued driving out of view. Over the appellant's objection, the trial court admitted the video.

The Commonwealth called Dr. Trista Wright, a toxicologist with the Department of Forensic Science, as an expert in toxicology. She analyzed the appellant's blood specimen and found a BAC of .038% by weight by volume. Dr. Wright also explained that she could calculate what the appellant's BAC was at 8:00 p.m. on November 14 through a "retrograde extrapolation," an analysis that determines an individual's BAC at an earlier time based on specific information. To determine the appellant's BAC using this method, Wright needed to know when he last consumed alcohol and that no alcohol was consumed after the accident. Over the appellant's objection, Wright opined, based on the breath test certificate, the blood analysis result, and the information that the appellant's last drink of alcohol was at 5:00 a.m. on November 14, 2020, that the appellant's BAC was between .08 to .13% by weight by volume at the approximate time of the accident.

The appellant testified in his own defense. He admitted driving the vehicle that struck the victim. He explained that when he left his cousin's house that evening, he drove to the store on Grace and Twelfth Streets. According to the appellant, he bought soda there, then drove back along Twelfth Street, which has a "steep incline." The appellant claimed that when he crested the hill near the intersection, he removed his foot from the accelerator, but the vehicle continued to "pick up speed." He testified that he saw "something" to the front left and tried to swerve but the vehicle struck it, cracking the windshield and tearing off the driver's side mirror. He circled the block and parked the car. After getting out of the car, he smoked a cigarette before walking back to the accident scene. The appellant said he did not realize that he hit a person until he went to the scene and saw paramedics attending to someone.

- 4 -

The jury convicted the appellant of involuntary vehicular manslaughter, misdemeanor driving while intoxicated, and felony hit-and-run. The trial court sentenced him to a total of twenty years and twelve months' incarceration, with nine years and six months suspended.[4]

ANALYSIS

The appellant raises seven assignments of error. Specifically, he contends that the trial court erred by admitting into evidence: (1) Woody's testimony as a witness for the Commonwealth, (2) the surveillance video, (3) the blood analysis, (4) Dr. Wright's opinion on retrograde extrapolation, and (5) portions of Officer Hertzog's testimony. In addition, the appellant argues that the evidence was not sufficient to support his convictions for felony hit-and-run and manslaughter.

I. Admissibility of Evidence

The appellant makes several arguments challenging the admissibility of certain evidence. The same well-established standard of review is applicable to each evidentiary challenge.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). The deferential abuse-of-discretion standard means that "a 'trial judge's ruling will not be reversed simply because an appellate court disagrees.'" *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Thomas v. Commonwealth*, 44 Va. App.

---

[4] The trial court sentenced the appellant with an additional twelve months for driving with a suspended or revoked license, with six months suspended.

741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). Instead, a reviewing court will conclude an abuse of discretion occurred only in a case in which "reasonable jurists could not differ" as to the decision. *Minh Duy Du*, 292 Va. at 564 (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"Of course, an error of law, 'by definition,' constitutes an abuse of discretion." *Bennett v. Commonwealth*, 69 Va. App. 475, 485 (2018) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). Nevertheless, "[i]n conducting *de novo* review of a legal issue, the appellate court defers to any factual findings underpinning it, including the credibility of the witnesses, and may reverse them only if they are plainly wrong." *Id.* Once the threshold for admissibility of evidence is met, it is left to the fact finder to determine what weight to assign it. *See Church v. Commonwealth*, 71 Va. App. 107, 122-23 (2019).

We consider each of the appellant's admissibility challenges in turn.

A. Woody's Testimony

The appellant argues that the trial court erred when it allowed the Commonwealth to call Woody in its case-in-chief. He notes that the prosecution did not disclose Woody as a witness until two days before trial, contrary to the discovery order.

The court ordered the Commonwealth to provide a list of expected witnesses to the appellant no later than twenty-one days before trial. *See* Rule 3A:11. The prosecutor did not disclose Woody, who is the appellant's cousin, as a witness in accordance with this order but asked the court to allow him to testify nonetheless. According to the prosecutor, she was unable to contact Woody until two days before trial. She argued that there was "no surprise" because the appellant had originally subpoenaed Woody as his own witness. The court allowed the testimony over the appellant's objection.

- 6 -

"Admission of relevant and material evidence at trial [that] was not previously disclosed as required by a discovery order . . . is not reversible error absent a showing of prejudice." *Conway v. Commonwealth*, 12 Va. App. 711, 716 (1991) (en banc). "To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy or affected the outcome of the trial." *Smoot v. Commonwealth*, 37 Va. App. 495, 502 (2002). When untimely disclosed inculpatory evidence is admitted, it "may affect the determination of guilt . . . and prejudice a defendant who is unprepared for its impact." *Id.* at 503.

Woody was known to the appellant and had been with him before and after the accident. He originally was subpoenaed by the appellant. Woody testified that the appellant was at his house on the day of the accident along with others to watch a football game. He stated that he did not know if the appellant had any alcohol to drink. According to Woody, the appellant left his house shortly after sunset in Woody's mother's car and contacted Woody after the accident. As Woody walked down the street to find the appellant, he saw the parked car and its cracked windshield.

Assuming without deciding that the challenged testimony was inculpatory, we examine whether it may have affected the determination of guilt or prejudiced the appellant. He contends that the lack of notice deprived him of the "opportunity to research, vet, and discuss with Mr. Woody what he knew" and why the Commonwealth called him as a witness. This claim of alleged prejudice is both general and speculative. The appellant does not specify any portion of Woody's testimony that surprised him. *See id.* Nor does he explain how an "earlier disclosure would have benefited [his] defense or altered the course of the trial." *See Davis v. Commonwealth*, 230 Va. 201, 204 (1985). For these reasons, the appellant failed to show prejudice, the trial court did not abuse its discretion, and this assignment of error fails.

## B. Surveillance Video

The appellant argues that the trial court erred by admitting into evidence the video from the Justis Market. He contends that the video was inadmissible under the "silent-witness theory" because Catherine Justis was unable to testify as to "*the process by which* the video was made." (Emphasis added).

A "[v]ideotape[], like [a] photograph[], when properly authenticated, may be admitted under either of two theories: '(1) to illustrate the testimony of a witness, and (2) as [a] "mute," "silent," or "dumb" independent photographic witness[].'" *Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) (quoting *Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972)); *see Bennett*, 69 Va. App. at 488 ("A video is admissible as an independent silent witness because, unless the video contains conduct that 'is intended [by the actor] as an assertion,' the contents of the video simply are not hearsay." (alteration in original) (quoting Va. R. Evid. 2:801(a))). Authentication of a videotape in the silent witness category depends on whether there are "adequate grounds for determining that the tape was an accurate representation of what it purported to depict." *Brooks*, 15 Va. App. at 411.

In this case, Justis testified that she had video surveillance cameras at her store. Her son programmed the surveillance system, which included a date and time stamp synchronized to the internet clock. Justis noted that she and her son were the only ones with access to the video recordings. Following the incident, Justis saved the parking lot video from the relevant time to a DVD and provided it to the police. The surveillance system allowed Justis to download segments of the video but not to edit the recordings.

Justis's testimony provided the trial court with a sufficient basis to find that the video was what the Commonwealth claimed it to be: an accurate recording of the traffic accident that occurred outside her convenience store on November 14, 2020. The fact that Justis did not have

formal training on the computer recording system and was unaware precisely how the software worked does not change this analysis. *See Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (stating that absent an abuse of discretion, a trial court's evidentiary ruling will be upheld on appeal). Consequently, the trial court did not abuse its discretion by admitting the surveillance video.

### C. Breath Test Procedure to Determine Blood Alcohol Content

The appellant contends that the trial court erred when it admitted the Commonwealth's breath analysis certificate "because Officer Ferguson did not follow the proper procedure when he performed and recorded the results of the [breath] test." He argues that the certificate was unreliable, and therefore inadmissible, because "Officer Ferguson did not actually do what he attested to."

The relevant statutory scheme provides that an individual "conducting a breath test" to analyze alcohol content "shall issue a certificate" containing certain information. Code § 18.2-268.9(B). That information includes "that the test was conducted in accordance with the Department[ of Forensic Science]'s specifications." *Id.*; *see* Code § 18.2-268.1. Such a certificate should also document "that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test." Code § 18.2-268.9(B). If a certificate is completed following the statutory parameters, it is admissible in a criminal proceeding. *Id.*

The Code makes clear, however, that the steps outlined in Code § 18.2-268.9 "relating to taking, handling, identifying, and disposing of blood or breath samples are procedural and not substantive" in nature, and "[s]ubstantial compliance" with the statute is "sufficient." Code § 18.2-268.11. "Failure to comply with any steps or portions thereof shall not of itself be grounds for finding the defendant not guilty." *Id.* Instead, such failure "shall go to the weight of

the evidence and shall be considered with all the evidence in the case." *Id.* A defendant has "the right to introduce evidence . . . to show noncompliance with the . . . procedures . . . and that as a result his rights were prejudiced." *Id.*

"In Code § 18.2-268.11, the legislature [made clear] that strict compliance with some" of Code § 18.2-268.9's "provisions . . . is not required for the admissibility of evidence." *See Shelton v. Commonwealth*, 45 Va. App. 175, 179 (2005). In other words, "a minor, trivial difference can be tolerated whereas a material difference cannot." *Id.* at 180 (quoting *Akers v. James T. Barnes of Wash., D.C., Inc.*, 227 Va. 367, 370 (1984)). "[T]he legislative remedy for a *procedural violation* is . . . a full and fair opportunity for both sides to attempt to prove or disprove any prejudicial effect of the violation." *Id.* at 179 (first alteration in original) (quoting *Cutright v. Commonwealth*, 43 Va. App. 593, 600-01 (2004)).

Here, the evidence established that Officer Ferguson forgot to inform the appellant of his right to observe the breath test process, the blood alcohol reading it produced, and the equipment used to perform the breath test, even though he attested on the certificate that he had in fact done so. During his testimony, however, Ferguson noted that the appellant "was physically present during that entire process until the end of the process when the test results [we]re printed out by the printer of the machine." He also stated that he let the appellant "observe the test results" and gave him a copy of those results.

The appellant has not "provided any evidence to show[] that the test result was inaccurate," nor has he shown "how noncompliance" with the precise "procedure may have deprived him of access to exculpatory evidence or how it may have prejudiced his rights." *See Shelton*, 45 Va. App. at 179. Officer Ferguson testified about his qualifications, the process, and the equipment he used for the test. He explained that he was a licensed breath test operator and used equipment approved by the Department of Forensic Science. Ferguson observed the appellant for twenty

- 10 -

minutes before conducting the breath test in order to ensure that the appellant did not burp or belch before the test, which would affect the test's accuracy. The appellant was present through the entire procedure and was provided with a copy of the printout of the results. Finally, his counsel had the opportunity to cross-examine the officer regarding the administration of the breath test.

The facts make clear that the officer's error was minor and insignificant when viewed in context. On this record, Officer Ferguson substantially complied with Code § 18.2-268.9 when he administered the breath test. He conducted everything in the appellant's presence and provided him with a copy of the results. The officer's failure to specifically tell the appellant that he could watch the test and see the equipment did not render the certificate of analysis inadmissible. The procedural deficiency goes to the weight of the evidence rather than its admissibility. The trial court properly admitted the certificate.

### D. Dr. Wright's Testimony about Retrograde Extrapolation

The appellant argues that Dr. Wright's retrograde extrapolation testimony was inadmissible under Virginia Rule of Evidence 2:702(b), which provides that speculative testimony is not admissible. He suggests that the extrapolation was based on the unproven assumption that he did not consume alcohol after the accident.

In a criminal case, an expert opinion "is generally admissible if it is . . . based upon facts in evidence." Va. R. Evid. 2:703(b). In contrast, "expert testimony is inadmissible if it is founded on assumptions that have an insufficient factual basis." *Payne v. Commonwealth*, 277 Va. 531, 542-43 (2009) (quoting *Keesee v. Donigan*, 259 Va. 157, 161 (2000)).

Officer Hertzog testified that shortly after the 8:00 p.m. accident, the appellant told him that he had last consumed alcohol in the early morning hours that day, before he went to sleep at 5:00 a.m. Hertzog stated that he did not see the appellant consume anything at the scene. The

- 11 -

appellant was arrested and taken from the scene to the hospital. From this evidence, a reasonable jurist could conclude that the appellant did not have any alcohol after the accident and before the BAC testing. Consequently, Dr. Wright's testimony on retrograde extrapolation of the appellant's BAC at the time of the collision was based on facts in evidence.

The trial court did not abuse its discretion when it admitted Dr. Wright's testimony on retrograde extrapolation.

### E. Hertzog's Testimony

The appellant suggests that the trial court erred by allowing Officer Hertzog to testify about the effects of alcohol on the body because he believes it was a medical opinion. We disagree.

When Officer Hertzog testified about the field sobriety tests that he administered, he explained that bodies are affected by alcohol consumption. Specifically, he testified that with a nystagmus field sobriety test, he looked for involuntary eye movement that can be present due to alcohol consumption. The appellant objected to this testimony, arguing that only a medical expert could testify about the effects of alcohol on the body. The trial court overruled the objection and allowed the testimony. Hertzog described how he conducted the nystagmus test and explained it was the "standard way that the test is administered." He stated that he noticed a mild "nystagmus and jerking motion of the eye" during the test.

In challenging this testimony on appeal, the only authority the appellant offers in support of his argument is *Combs v. Norfolk & Western Railway*, 256 Va. 490 (1998).[5] In that case, the Supreme Court of Virginia held that the witness was not a medical expert and therefore was "not qualified to state an expert medical opinion regarding what factors cause a human disc to rupture." *Combs*, 256 Va. at 496-97. Contrary to the appellant's contention, Officer Hertzog did not offer a

---

[5] We assume without deciding that the appellant presented sufficient legal authority on brief to support his contention, as required by Rule 5A:20(e).

medical opinion. He simply explained how he conducted the nystagmus field sobriety test and that his execution of the test comported with the standard for test administration. Hertzog described the involuntary eye motion he looked for when conducting the test and noted that such motion can be present if the subject has consumed alcohol. Because this testimony was not a medical opinion, the appellant's argument necessarily fails. Once the threshold for admissibility of the testimony was met, it was up to the jury to determine what weight to give it. *See Church*, 71 Va. App. at 122-23. The trial court did not abuse its discretion in permitting the testimony.

## II. Sufficiency

The appellant contests the sufficiency of the evidence, a challenge subject to a well-defined standard of review. In reviewing the sufficiency of the evidence, the Court defers to the jury's findings of fact unless they are plainly wrong or without evidence to support them. *See Secret v. Commonwealth*, 296 Va. 204, 228 (2018). This deference is owed to both the assessment of the credibility of the witnesses and the reasonable inferences to be drawn from basic facts to ultimate facts. *See Commonwealth v. Hudson*, 265 Va. 505, 514 (2003). "Viewing the record through this evidentiary prism requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth . . . .'" *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "[A] reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (en banc) (quoting *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003)). Instead, the court "ask[s] whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Crowder*, 41 Va. App. at 663).

The appellant argues that the Commonwealth failed to present evidence sufficient to support his convictions for felony hit-and-run and involuntary manslaughter.[6]

## A. Felony Hit-and-Run

Code § 46.2-894, colloquially known as the hit-and-run statute, requires that the driver of a vehicle "involved in an accident" stop if a person is killed or injured or attended property is damaged. "Knowledge . . . is an essential element of the crime." *Brannon v. Commonwealth*, 52 Va. App. 800, 804 (2008) (quoting *Herchenbach v. Commonwealth*, 185 Va. 217, 220 (1946)). Further, the driver must "immediately stop as close to the scene of the accident as possible without obstructing traffic." Code § 46.2-894. The driver must also report certain identifying information and "render reasonable assistance to any person injured in such accident." *Id.*

The appellant disputes only the proof of knowledge and the requirement to stop.

### 1. Knowledge

To establish the element of knowledge, the Commonwealth was required to prove two components. The first component is "that the defendant possessed actual knowledge of the occurrence of the accident," which requires an assessment of his subjective understanding. *Brannon*, 52 Va. App. at 804 (quoting *Neel v. Commonwealth*, 49 Va. App. 389, 395 (2007)). The second component is that the defendant had at least constructive knowledge that, as a result of the accident, someone was injured or died. *See Kil v. Commonwealth*, 12 Va. App. 802, 810-11 (1991). This objective component is viewed under the "reasonable man standard as to [knowledge of] the fact or extent of the injury." *Id.* at 810 (quoting *Commonwealth v. Kauffman*, 470 A.2d 634, 637 (Pa. Super. Ct. 1983)). "[K]nowledge of injury may be imputed to a driver

---

[6] He also contends that the evidence was insufficient to support his conviction for driving while under the influence of alcohol. This argument is predicated entirely on the theory that Dr. Wright's extrapolation testimony was inadmissible. In light of our holding that Wright's testimony was admissible, we do not further address the sufficiency of the evidence for this conviction.

'where the fact of personal injury is visible or where the seriousness of the collision would lead a reasonable person to assume there must have been resulting injuries.'" *Brannon*, 52 Va. App. at 804 (quoting *Neel*, 49 Va. App. at 395).

Only the objective component of knowledge is at issue in this case. The question for our resolution is whether any rational factfinder could have concluded from the evidence that a reasonable person in the appellant's circumstances should have known that the accident caused a person to be injured.

The evidence, viewed under the proper standard, supports a finding that a reasonable person would have known that someone was injured. The appellant initially told Officer Babbitt that the "[g]irl came across the street" and "[t]he car hit her." The accident happened at night, and the victim wore dark clothing, but the appellant's headlights were illuminated, and streetlights were on. The area was in a neighborhood, at an intersection with sidewalks and a convenience store. In other words, the accident happened in an area in which a reasonable person would expect pedestrians. The video shows that the victim was already in the road crossing as the appellant approached in his vehicle. The photographs recording the damage to the car from the impact show the driver's side headlamp was broken and the windshield on the driver's side was shattered. The driver's side mirror was torn off. This evidence supports the conclusion that the victim would have been visible to a reasonable driver either as she was crossing the street or, at the very least, while she was on the hood of the car during her impact with the windshield. Viewing the circumstances in their entirety, we cannot say that no rational jury could find that the appellant had at least constructive knowledge that someone was injured in the accident. *Cf. Herchenbach*, 185 Va. at 221 (holding that the evidence was not sufficient to prove the element of knowledge because the accident occurred on a very foggy night and the decedent was lying in the road at the time of impact). *See generally Commonwealth v. Barney,*

___ Va. ___, ___ (Mar. 16, 2023) (noting that an appellate court "review[s] factfinding with the highest degree of appellate deference" (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015))); *Fary v. Commonwealth*, 77 Va. App. 331, 341 (2023) (en banc) (same).

### 2. Failure to Immediately Stop

The statute requires that a driver involved in an accident must "immediately stop as close to the scene of the accident as possible without obstructing traffic." Code § 46.2-894.

This Court has previously addressed this requirement. The statutory language "clearly requires drivers to stop as close to the accident, or point of impact, as safety will permit." *Edwards v. Commonwealth*, 41 Va. App. 752, 770 (2003) (en banc). "Any other interpretation of the statute would make the word 'immediately' meaningless and foil the intent of the statute." *Id.* Whether a driver failed to stop immediately as close to the scene of the accident as possible without obstructing traffic is a factual finding that will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *See generally Secret*, 296 Va. at 228 (setting forth the standard of review for factual findings).

In the instant case, the jury's finding that the appellant did not immediately stop as close to the accident as possible is supported by the record. The video recording of the accident reflects that the car did not perceptibly slow down after impact with the victim. Nor did it stop at the scene. No cars were driving behind the appellant, so he could have stopped the car immediately without obstructing traffic. Instead of stopping immediately, he circled the block, parked the car a block away, smoked a cigarette, and then returned to the collision scene on foot. Despite the obvious damage to the driver's windshield, headlamp, and side mirror, the appellant told Officer Babbitt that he did not stop sooner because he did not know he had hit someone. He also testified at trial that he knew he hit "something" but did not realize at the time "it was a person." *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging

- 16 -

witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth,* 27 Va. App. 505, 509-10 (1998))); *see also Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc) (noting that a jury can "believe or disbelieve, in part or in whole, the testimony of any witness").

The evidence, viewed in the light most favorable to the Commonwealth, supports the factual finding that the appellant, after striking a pedestrian, did not immediately stop as close to the scene of the accident as possible to do safely. Therefore, the jury's finding was not plainly wrong or without supporting evidence.

We conclude that the evidence sufficiently proved both that the appellant had knowledge that someone was injured in the collision and that he failed to stop immediately as required by the statute. Consequently, the record supports the conviction for felony hit-and-run.

### B. Involuntary Manslaughter

The appellant contends that the involuntary manslaughter conviction must be reversed because the Commonwealth did not establish that his intoxication caused the collision. This claim was not raised properly in the trial court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. This Court will not consider an argument on appeal that was not presented to the trial court. *See Stokes v. Commonwealth*, 61 Va. App. 388, 396-97 (2013). "Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

A defendant who has presented his own evidence to a jury may "preserve[] his objections to the sufficiency of the evidence . . . in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (also noting that a defendant who did not present evidence may preserve the challenge in a motion to strike at the close of the Commonwealth's evidence).

The appellant waived his current sufficiency challenge to his involuntary manslaughter conviction by not raising it properly at trial. *See id.* At the close of the Commonwealth's evidence, the appellant made a motion to strike. At that time, he argued only that the evidence was insufficient to prove felony hit-and-run. He renewed that specific motion later, again arguing the elements of the hit-and-run charge. The appellant did not make a motion to set aside the jury's verdict. In the appellant's opening brief, he identifies his renewed motion to strike as preserving his argument challenging involuntary manslaughter below. Contrary to the appellant's suggestion, however, his counsel simply renewed the motion that was limited to challenging the hit-and-run conviction and made no further argument. *See* Rule 5A:20(c) (requiring an opening brief to pinpoint in the record where each assignment of error was preserved). Although he made the involuntary manslaughter argument to the jury, raising a sufficiency argument to the jury does not preserve the legal challenge for appeal. *See Bass*, 292 Va. at 33.

For these reasons, we do not consider this assignment of error.[7]

CONCLUSION

We conclude that the trial court did not abuse its discretion in admitting Woody's testimony, the surveillance video, Dr. Wright's expert testimony on retrograde extrapolation, or

---

[7] "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, [the] appellant does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

Officer Hertzog's testimony about the effects of alcohol as it related to the nystagmus field sobriety test he administered. In addition, the evidence supports the findings that the appellant had knowledge someone was injured as a result of the accident and that he failed to stop immediately as required by statute. The evidence was sufficient to prove felony hit-and-run. Finally, the appellant's assignment of error challenging the sufficiency of the evidence of his involuntary manslaughter conviction is procedurally defaulted. Accordingly, we affirm the convictions.

*Affirmed.*